Theresa CAMPISI and John R.
Campisi, H/W, Appellant

v.

ACME MARKETS INC., Appellee.

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.
Filed Dec. 20, 2006.

**118**

William E. Malone, Jr., Media, for appellant.

Peter C. Kennedy, Philadelphia, for appellee.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY KELLY, J.:

¶1 Appellants, Theresa and John R. Campisi,[1] appeal from the judgment entered in the Delaware County Court of Common Pleas in favor of Appellee, Acme Markets, Inc., after granting Acme's motion for judgment not withstanding the verdict (JNOV).[2] Specifically, Appellant challenges the trial court's finding that she failed to prove the existence of a legal duty owed to her by Acme, on whose premises she fell, sustaining injuries. We hold that because of the known and obvious dangers of a grocery store, the store has no duty to warn business invitees of dangers posed on the premises by the presence of a disabled employee. Accordingly, we affirm.[3]

¶2 A blind Acme employee was walking alone with his white aluminum guide cane toward the restroom at the rear of the store as Appellant walked down a parallel aisle in the same direction. As the blind employee reached the end of his aisle, his cane extended into the path of Appellant, who was rounding the corner of her aisle and did not see the employee or the cane. Appellant tripped over the cane, fell to the floor, and sustained several significant injuries. These events were captured by an Acme surveillance camera.

¶3 Appellants sued Acme for negligence. A jury rendered a verdict in their favor, awarding $100,000 to Appellant and $15,000 to John. Acme moved for post-trial relief and JNOV, asserting that Appellant failed to prove the existence of a duty to her. The trial court granted Acme's motion and entered judgment in its favor. This appeal followed.

¶4 Appellant presents three questions on appeal, each a version of the same inquiry: whether proprietors owe a duty to warn business invitees of foreseeable risks allegedly posed by disabled full-time employees traversing the premises. She claims that the constant presence of a full-time, blind employee presents a risk to customers who may not be aware that a sightless employee often walks through the store, and suggests that customers cannot be expected, without sufficient warning, to take precautions against the

---

1. John appeals solely on the basis of his suit for loss of consortium. Because the issues concern facts primarily involving Theresa, we refer to her alone as Appellant.

2. Appellant erroneously appealed from the order entered December 6, 2005, instead of the judgment entered the same date. We have amended the caption accordingly.

3. The National Federation of the Blind of Pennsylvania (NFBP) has filed an *amicus* brief in support of Appellee.

supposed dangers presented by the actions of such employees. Thus, she maintains that the trial court erred by granting Acme's motion for post-trial relief and JNOV. We disagree.

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard[s] of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a judgment N.O.V. can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Janis v. AMP, Inc.*, 856 A.2d 140, 143–44 (Pa.Super.2004) (quoting *Capital Care Corp. v. Hunt*, 847 A.2d 75, 81–82 (Pa.Super.2004)), *appeal denied*, 875 A.2d 1075 (Pa.2005).

¶ 5 There is no dispute over causation and damages in this negligence claim; the parties dispute only whether a legal duty to warn existed. "Whether a duty exists under a particular set of facts is a question of law." *Petrongola v. Comcast–Spectacor, L.P.*, 789 A.2d 204, 209 (Pa.Super.2001) (quoting *Herczeg v. Hampton Twp. Mun. Auth.*, 766 A.2d 866, 871 (Pa.Super.2001), *appeal denied*, 788 A.2d 376 (Pa.2001)), *appeal denied*, 803 A.2d 736 (Pa.2002). "The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa.Super.1998) (citation omitted). In determining the scope of duty property owners owe to business invitees, we have relied on Restatement (Second) of Torts § 343, which provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*See Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa.Super.2001) (quoting Restatement (Second) of Torts § 343).

¶ 6 An invitee must demonstrate that the proprietor deviated from its duty of reasonable care owed under the circumstances. *Id.* at 791. Thus, the particular duty owed to a business invitee must be determined on a case-by-case basis. *See Campbell v. Eitak, Inc.*, 893 A.2d 749, 751

(Pa.Super.2006) (classification of plaintiff as business invitee did not by itself establish particular duty restaurant owed him based on circumstances of case). "Neither the mere existence of a harmful condition in a store nor the mere happening of an accident due to such a condition evidences a breach of the proprietor's duty of care or raises a presumption of negligence." *Neve, supra* at 790 (citing *Zito v. Merit Outlet Stores,* 436 Pa.Super. 213, 647 A.2d 573, 575 (1994)). Restatement Section 343A provides that no liability exists when the dangerous condition is known or obvious to the invitee unless the proprietor should anticipate the harm despite such knowledge. Restatement (Second) of Torts § 343A(1) (1965). Comment (e) states:

> If [the invitee] knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Restatement (Second) of Torts § 343A cmt. e (1965).

¶ 7 Instantly, the material facts are not in dispute; therefore, the trial court will not have abused its discretion if Appellant failed to prove the existence of Acme's legal duty to her. *See Janis, supra.* Appellant would require all businesses to warn customers of the possibility that a blind person, either an employee or a customer, may be traversing the premises, or to take extra precautions when hiring blind employees. In so arguing, Appellant essentially classifies blind people as a "harmful condition" necessary to establish a legal duty.[4]

¶ 8 Although she asserts that a blind employee who works full-time at the store increases the risk of danger to customers, Appellant's argument, that customers would be more cautious if stores posted a sign indicating the presence of a blind employee, is specious at best.[5] In effect, Appellant attempts to establish a legal duty owed by Acme to her by shifting attention away from her own responsibilities as an invitee and claiming instead that the employee's handicap alone created the risk of harm. However, although comparative negligence was not at issue, Appellant's actions and responsibilities are nonetheless relevant pursuant to Restatement Section 343A's provision for known and obvious dangers. The location of the accident is the most relevant consideration, because no duty exists if the invitee knows: (1) the actual conditions; (2) the activities carried on; and (3) the dangers involved in either. *See* Restatement (Sec-

---

4. In fact, by logical extension, Appellant's proposed classification would necessarily include not only the blind, but any person whose handicap requires some mechanical assistance such as a cane or walker.

5. In so arguing, Appellant emphasizes that she was a new customer and did not know

Acme's employees. We find such facts to have little relevance given our findings, *infra,* that customers should always be aware that handicapped people, whether employees or customers, may journey through the store. Thus, the customer's familiarity with the employees and regular clientele is irrelevant.

ond) of Torts § 343A cmt. e. A grocery store, with its aisles bordered by high shelves stacked with merchandise, naturally presents the danger of a large blind spot as customers exit an aisle. Whether the hazard is a shopping cart that suddenly juts out, a customer's foot, or someone's cane, customers must constantly be on alert for obstacles when exiting a grocery store aisle. The likelihood of danger further increases when a customer rounds the corner of an aisle directly toward the end of the adjacent aisle, as Appellant did here. Thus, we would consider a **customer's** duty of ordinary care to include looking for obstacles before exiting an aisle. *See* Restatement (Second) of Torts § 343A (property owners have no duty to protect invitees from known or obvious dangers avoidable by exercise of ordinary care).

¶ 9 Further, although Appellant suggests that a store's duty should include posting warning signs and having an escort available for the blind employee, (*see* Appellant's Brief at 22), these suggestions are neither necessary nor practical. Reasonable persons realize that blind people, or people with canes, are capable of working in many occupations. Grocery stores attract a wide variety of customers with various handicaps, including blindness; thus, a grocery store customer should be well aware that, at any given moment, there is a reasonable likelihood he will encounter a disabled person. We therefore have no hesitation in finding that the hazard alleged by Appellant was a known or obvious danger under Restatement Section 343A.

¶ 10 We further note that, at trial, Appellant claimed she was distracted by signs and displays placed at the ends of the

aisles, which caused her to look away from the floor: "[T]here are always products on the ends of the aisles. I don't know, I read that's to get your attention to them. But I know there were products. So I really couldn't look around the corner to see if Stanley was coming." (N.T. Trial, 8/29/05, at 50). However, just as drivers are not relieved of responsibility for accidents if they are distracted by billboards, customers are not relieved of the responsibility of watching for obstacles while they walk, even if they are distracted by sales displays.

¶ 11 We conclude that even if employment of the blind increases the risk of an accident such as Appellant's, such a risk does not overcome a customer's responsibility to avoid the known and obvious dangers present upon exiting a grocery store aisle. The trial court properly found that Appellant failed to prove the existence of Acme's legal duty to her. Accordingly, we affirm the court's order reversing the jury's verdict and entering judgment for Acme.[6]

¶ 12 Judgment affirmed.

---

6. Acme and NFBP also raise public policy concerns about the conflict that would arise between such legislation as the Americans with Disabilities Act and a finding in Appellant's favor. As we have decided Appellant is not entitled to relief, we need not address their public policy arguments.